UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| JEOFFREY L. BURTCH,<br><br>    Appellant,<br><br>  v.<br><br>AVNET, INC.,<br><br>    Appellee. | C.A. No. 13-060-LPS |

## MEMORANDUM ORDER

At Wilmington this **16th** day of **January, 2015**:

Having reviewed the appeal taken by Jeoffrey L. Burtch ("Trustee"), and the papers submitted in connection therewith (D.I. 1-1; *see also, e.g.*, D.I. 11, 12, 14),

**IT IS HEREBY ORDERED** that, for the reasons stated below, the order of the bankruptcy court dated November 26, 2012 is **REVERSED** and **REMANDED**.

Background. This appeal stems from a lengthy history of proceedings in the Bankruptcy Court, from which the Court will highlight the most relevant events. ManagedStorage International, Inc. and its related affiliates ("the Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code in February 2009. (D.I. 11 at 3) That same day, the Debtors filed a motion to sell all of their assets free and clear of liens to Laurus Master Fund, Ltd. ("Laurus"). (*Id.* at 4) Avnet objected to the sale and asserted a purchase money security interest ("PMSI") in certain of Debtors' assets. (*Id.* at 3) To resolve Avnet's objection, on April 2, 2009, the Debtors, the Creditors' Committee, and Avnet entered into and filed a "Stipulation Between Debtors, The Official Committee of Unsecured Creditors, and Secured Creditor, Avnet, Inc.,

1

Regarding Purchase Money Security Interest Funds" (the "PMSI Stipulation"), which required that the Debtors segregate and maintain the Avnet PMSI collateral. (*See* D.I. 11 at 4; D.I. 12 at 4)

On February 24, 2010, Avnet filed a Motion of Secured Creditor Avnet, Inc., To Enforce Sale Order To Specifically Exclude Avnet PMSI Collateral From Sale Assets And To Compel Laurus Master Fund, Ltd., Valens Offshore SPV I, Ltd., Valens Offshore SPV II, Corp., Valens U.S. SPV I, LLC, And/Or Psource Structured Debt Limited, To Turn Over Avnet Collateral (the "Avnet Enforcement Motion"). (D.I. 12 at 5) The Avnet Enforcement Motion asserted that the Avnet PMSI collateral was never segregated into the Debtor PMSI Account as required by the PMSI Stipulation that had been entered into at the time of the sale of assets to Laurus. (D.I. 11 at 5) On March 27, 2010, Laurus filed an Objection to the Avnet Enforcement Motion. (D.I. 12 at 5)

A hearing was scheduled for May 19, 2010. (D.I. 11 at 7) On May 17, 2010, an agenda for the forthcoming hearing was distributed to all parties in interest, showing that Avnet's Enforcement Motion was the only contested matter going forward. (D.I. 12 at 5; D.I. 13 at SA31-32) The agenda also stated: "Avnet's counsel has circulated a proposed stipulation that the parties are attempting to finalize prior to the hearing. This matter will go forward." (D.I. 13 at SA31-32; D.I. 11-5 at A441)

Meanwhile, Avnet, Laurus, and the Debtors negotiated a settlement among themselves ("the Stipulation and Release") to resolve the Avnet Enforcement Motion. (D.I. 11-4 at A242-52) The Stipulation and Release provides as follows:

2

> Debtors, for themselves and their respective heirs, executors, administrators, representatives, officers, directors, agents, attorneys, subsidiaries, affiliates, divisions, parents, predecessors and assigns hereby: (a) release and discharge Avnet and each of its heirs, representatives, officers, directors, employees, agents, attorneys, subsidiaries, affiliates, parents, predecessors, successors and assigns, from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, executions, claims and demands relating to the Debtors and their Chapter 11 cases only, in law or equity, including but not limited to any claims relating to the Avnet PMSI collateral.

(*Id.* at A248)

In addition, the Stipulation and Release outlined the consideration negotiated in the settlement:

> [T]he Debtors, Avnet, and Laurus intending to be legally bound upon the execution of this Stipulation and Bankruptcy Court approval of this Stipulation, intending to avoid the costs, expenses and outcome of litigation and for other good and valuable consideration, agree as follows: 1. The Settling Payors shall pay Avnet $975,000 (nine hundred seventy five thousand dollars) ("Settlement Payment") within 5 (five) days of this Court's approval of this Stipulation and such approval becoming final and non-appealable in full and complete satisfaction of all amounts owing by the Debtors under the Stipulation and/or with respect to the Debtor PMSI Account [. . .], the Avnet PMSIs, the Avnet PMSI Collateral and the claims against the Laurus Parties being released herein.

(*Id.* at A245)

On May 19, 2010, the day of the scheduled hearing, the Amended Notice of Agenda of Matters Scheduled for Hearing on May 19, 2010 ("Amended Agenda") was served on all parties in interest – including the Creditor's Committee. (D.I. 13 at SA33-34) This Amended Agenda

3

stated, "The parties are submitting under certification of counsel a stipulation resolving this matter and accordingly the hearing on this matter has been cancelled." (*Id.*) At the same time, pursuant to Local Bankruptcy Rule 9019-1, Avnet submitted a certification of counsel ("CoC") which stated, "The Debtors, Avnet and Laurus have been negotiating a settlement of the matters set forth in the Motion and have agreed upon the Stipulation and Releases Among Debtors, Secured Creditor, Avnet, Inc., and Laurus Related Parties Regarding Purchase Money Security Interest Collateral, attached hereto as Exhibit 1." (D.I. 11-4 at A240) The same day, May 19, 2010, the Bankruptcy Court entered an order approving the Stipulation. (D.I. 11-4 at A272) No hearing took place on May 19, 2010 in this matter.

Thereafter, the Bankruptcy Court entered an order converting the Debtors' Chapter 11 cases to Chapter 7 cases and on November 4, 2010, Jeoffrey L. Burtch was appointed as trustee of the Debtors' estates. (D.I. 11-5 at A429-30) On January 12, 2012, the Trustee filed suit against Avnet under Sections 547 and 550 of the Bankruptcy Code ("the Preference Claims"), seeking "to avoid and recover from [Avnet] . . . all preferential transfers of property made for or on account of antecedent debt" in the 90 days prior to the filing of the Debtors' bankruptcy petition. (D.I. 11-4 at A286) On March 30, 2012, Avnet filed a motion to dismiss the Preference Claims, asserting that the Trustee's claims against Avnet had been released by the Stipulation and Release. (D.I. 11-4 at A294-95)

On November 28, 2012, the Bankruptcy Court entered an order ("the Order") granting Avnet's motion to dismiss. (D.I. 11-5 at A427-48) In doing so, the Bankruptcy Court concluded that: (1) the Trustee was bound by the Stipulation and Release; (2) the scope of the Stipulation

4

and Release included the Preference Claims; and (3) the Stipulation and Release was properly approved with notice and hearing as required by Bankruptcy Rule 9019. (*Id.*)

Contentions. On appeal, the Trustee argues that the Bankruptcy Court erred by (1) incorrectly finding that the Debtors received adequate consideration for the general releases contained in the Stipulation and Release, (2) incorrectly finding that the Trustee is bound to the Stipulation and Release, as the Bankruptcy Court "ignored the parties' failure to move for Bankruptcy Court approval of a compromise or settlement 'after notice and a hearing' as required under Federal Rule of Bankruptcy Procedure 9019(a)," and (3) incorrectly finding that Avnet, the Laurus Parties, and the Debtors provided adequate notice to creditors regarding the Stipulation and Release. (D.I. 11 at 2-3) In the Trustee's view, the Debtors did not receive anything more than the illusory consideration of "avoiding the costs, expenses, and outcome of litigation." (D.I. 11 at 10) Furthermore, the Trustee asserts that, independent of the consideration issues, the Bankruptcy Court failed to approve the Stipulation and Release as required by Bankruptcy Rule 9019 and under the standards promulgated in *In Re Martin*, 91 F.3d 389, 393 (3d. Cir. 1996), making the Stipulation and Release invalid and unenforceable against the bankruptcy estate. (D.I. 11 at 13) Lastly, the Trustee asserts that, even if the Court finds there was consideration and the Stipulation and Release is valid and includes the Preference Claims at issue, such a settlement can only be approved after notice and a hearing under Bankruptcy Rule 9019, which did not occur here. (D.I. 11 at 16)

Standard of Review. Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. Pursuant to § 158(a), district courts have mandatory jurisdiction to hear

5

appeals "from final judgments, orders, and decrees" and discretionary jurisdiction over appeals "from other interlocutory orders and decrees." 28 U.S.C. § 158(a)(1) and (3). In conducting its review of the issues on appeal, the Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). The Court must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992).

Analysis. Having reviewed the parties' arguments, and the record on appeal, the Court concludes that the Bankruptcy Court committed no clear error of fact and no error of law in determining that: (1) the Trustee is not freed from the binding effect of the Stipulation and Release based on lack of consideration, and (2) the scope of the Stipulation and Release includes the Preference Actions.

In particular, the Court does not find error in the Bankruptcy Court's determination that there was consideration given to the Debtors for the release given to Avnet. "Delaware courts define consideration as a benefit to a promisor or a detriment to a promisee pursuant to the promisor's request." *Cont'l Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1232 (Del. Ch. 2000). The Stipulation and Release set forth the consideration given as "avoid[ing] the costs, expenses and outcome of litigation." (D.I. 11-4 at A245) "[W]hen a contract term is the subject

6

of an honest dispute, avoiding the consequences of the dispute – such as litigation or the risk of damages – may serve as consideration for a contract." *Falco v. Alpha Affiliates, Inc.*, 1999 WL 222464, at *8 (D. Del. Mar. 24, 1999). Although the Trustee now asserts that the Debtors' insolvency at the time it entered into the Stipulation and Release warrants finding the consideration to be "illusory" and "worth literally nothing" (D.I. 11 at 10), the Trustee has not met the high burden to set aside a contractual agreement for lack of consideration. *See Libeau v. Fox*, 880 A.2d 1049, 1056 (Del. Ch. 2005) ("When parties have ordered their affairs voluntarily through a binding contract, Delaware law is strongly inclined to respect their agreement, and will only interfere upon a strong showing that dishonoring the contract is required to vindicate a public policy interest even stronger than freedom of contract.").

Instead, the record establishes that, "[i]n exchange for: (a) the release the Debtors provided to Avnet and (b) a sum of money that was $300,000 less than what Avnet was due, Avnet released its claims against the Debtors, including claims related to the Debtors' violation of the Order approving the [PMSI] Stipulation requiring the Debtors to segregate Avnet's collateral." (D.I. 12 at 12-13) The Court agrees with Avnet that, "Not having to answer to the Bankuptcy Court and Avnet for contempt charges for failing to comply with the court order [to segregate the assets] was, without a doubt, a significant benefit to the Debtors." (*Id.* at 14) In addition, no evidence has been presented from which this Court could find that the Stipulation and Release was unconscionable.

The Court finds merit, nonetheless, in the Trustee's contentions that adequate notice was not provided. The Trustee contends that the Stipulation and Release is invalid because it was not

7

approved pursuant to Bankruptcy Rule 9019 and the standards set forth in *In Re Martin*. (*See* D.I. 14 at 10)

Bankruptcy Rule 9019 states: "On a motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor . . . and to any other entity as the court may direct." Fed. R. Bankr. P. 9019(a).

Also implicated here is the Local Rule regarding Certificates of Counsel, which provides:

> **Rule 9019-1 <u>Certificate of Counsel</u>**. Filed objection(s) or informal objection(s) to a Motion, Omnibus Objection to Claims or other pleading filed with the Court may be resolved by submitting a revised or agreed form of order filed with a Certificate of Counsel ("CoC") consistent with all of the following requirements stated in (a) - (c) below. The CoC procedure may also be utilized under such other circumstances as the Court directs.
>
> (a) The CoC must be signed by Delaware Counsel (as defined in Local Rule 9010-1), and attach a proposed revised or agreed form of order as an exhibit. The CoC must state whether the revised or agreed form of order has been reviewed and approved by all the parties affected by the order. A CoC shall be served on all affected parties.
>
> . . .
>
> Upon receipt of the CoC, the Court may enter the order attached to the CoC without further pleading or hearing or schedule the CoC for hearing.

(Del. Bankr. L.R. 9019-1)

Avnet asserts that since the Stipulation and Release was submitted and approved as a resolution of objections to Avnet's Enforcement Motion, there was nothing out of the ordinary or

8

otherwise improper in the parties' and the Bankruptcy Court's use of the procedure outlined in Local Rule 9019-1. Avnet continues by arguing that the Bankruptcy Court's action does not implicate either Bankruptcy Rule 9019 or *In Re Martin*.

"Under Bankruptcy Rule 9019, a bankruptcy judge has the authority to approve of a compromise of a claim, provided that the debtor, trustee and creditors are given twenty days' notice of the hearing on approval of a compromise or settlement by the trustee." *In Re Martin*, 91 F.3d at 393 (citing Bankruptcy Rule 2002(a)(3)). Bankruptcy Rule 9006(c) provides that a Bankruptcy Court "for cause shown may in its discretion with or without motion or notice order the [notice] period reduced." Additionally, Bankruptcy Rule 2002(a)(3), which is entitled "Notices to Creditors, Equity Security Holders, Administrators in Foreign Proceedings, Persons Against Whom Provisional Relief Is Sought in Ancillary and Other Cross-Border Cases, United States, and United States Trustee" directs 21 days' notice to parties in interest for the hearing on approval of a compromise or settlement, "unless the court for cause shown directs that notice not be sent."

While it is clear from these rules that settlement is encouraged, and the Bankruptcy Court is given broad discretion to approve settlements and reduce or eliminate notice periods, there are limits to the Bankruptcy Court's discretion. *See generally Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) ("The fact that courts do not ordinarily scrutinize the merits of compromises involved in suits between individual litigants cannot affect the duty of a bankruptcy court to determine that a proposed compromise forming part of a reorganization plan is fair and equitable."); *In re Key3Media*

*Group, Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) (noting decision to approve a settlement is within sound discretion of Bankruptcy Court).

On the record before the Court, it appears that no notice was provided of the terms of the Stipulation and Release, and particularly of the broad language used in the general release provision. The Bankruptcy Court explained the "cause" it found for shortening the notice period, as allowable under Rule 2002(a)(3).

> Here, the Committee was a party (including a signatory) to the prior stipulation with Avnet, which was approved by the Court. Further, the Committee and other parties became aware of the Debtors' failure to comply with the Order approving the prior stipulation when Avnet filed and served its Motion to compel turnover of its collateral. The Committee and other interested parties had notice from the [Amended] Agenda that an additional stipulation was being circulated to resolve Avnet's motion. Thus, the Court concludes there was no prejudice by the lack of twenty-one days' notice of the Stipulation.

(D.I. 11-5 at A443) The Bankruptcy Court included a footnote stating that "[b]ecause the Committee was active in the case and had been a signatory to the prior Avnet stipulation, the Court finds it probable that the Committee had first-hand knowledge of the Stipulation and Release." (*Id.*) However, the Bankruptcy Court acknowledged that "it is not clear that the Committee had advanced notice of the terms of the Stipulation including the Release," but nevertheless found "that notice was appropriate under the circumstances." (*Id.* at A442)

The Bankruptcy Court committed a clear error of fact, as the record fails to demonstrate that there was any notice, and therefore the Bankruptcy Court also committed legal error. Particularly as the Bankruptcy Court was addressing a motion to dismiss under the standards of

10

Rule 12(b)(6), in which the well-pleaded factual allegations made in the complaint must be taken as true, it was wrong to presume (contrary to the allegations) that notice had been given. It follows that it was error to find "cause" to reduce the notice period when there was an inadequate basis to find that any notice had actually been given.

Finally, the Bankruptcy Court did not evaluate, under *In Re Martin*, the propriety of the compromises made in the Stipulation and Release, at least to the extent such compromises extended beyond resolution of the objections to the Enforcement Motion. (*See* D.I. 11-4 at A272) It was not asked to do so. The Enforcement Motion, which dealt specifically with the dispute regarding the segregated assets, did not deal with general issues such as the waiver of preference claims. The interested parties which were not parties to the Stipulation and Release did not assent to such a waiver. On remand, the Bankruptcy Court should assess the Stipulation and Release by the standards of *In Re Martin*.

Conclusion. For the reasons explained above, the Bankruptcy Court's order granting Avnet's Motion to Dismiss is REVERSED and REMANDED, consistent with this opinion, and for the Bankruptcy Court to proceed in a manner not inconsistent with this Court's Order.

_____
UNITED STATES DISTRICT JUDGE

11